**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**Electronically Filed**

CIVIL ACTION NO.:  3:12-cv-00057-DCR

RALEIGH BRUNER, an individual, and WILDCAT MOVING, LLC, a Kentucky Limited Liability Company,                                          PLAINTIFFS,

v.                                    **PLAINTIFFS' MEMORANDUM**
**IN OPPOSITION TO DEFENDANT**
**CONWAY'S MOTION TO DISMISS**

JACK CONWAY, Attorney General of the Commonwealth of Kentucky; TOM ZAWACKI, Commissioner of Motor Vehicle Regulation for the Kentucky Department of Vehicle Regulation; MARTIN MATHEWS, Director for Motor Carriers of the Kentucky Transportation Cabinet Division of Motor Carriers; MARY COOK, Assistant Director of the Kentucky Transportation Cabinet Division of Motor Carriers; BRIAN BEAVEN, Assistant Director of the Kentucky Transportation Cabinet Division of Motor Carriers; and BILL DEBORD, officer of the Kentucky Transportation Cabinet Division of Motor Carriers; all in their official capacities,                    DEFENDANTS.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## STATEMENT OF THE CASE

This civil rights lawsuit challenges the constitutionality of a licensing procedure established by Kentucky's laws regulating moving companies.  Plaintiffs Raleigh Bruner and Wildcat Movers LLC (collectively Bruner[1]) operate a business which provides a range of moving services to  clients.  Verified Complaint for Declaratory

_____

[1] With the exception of the privileges or immunities cause of action, Plaintiffs assert identical causes of action and arguments here, and are therefore referred to herein collectively as "Bruner."  The privileges or immunities cause of action is asserted only by Plaintiff Raleigh Bruner.

- 1 -

and Injunctive Relief—Civil Rights (Complaint) ¶ 2.  Bruner is fully qualified and competent to perform moving services, and has provided satisfactory moving services to hundreds of clients.  *Id.* ¶ 3.  But he is forbidden by Kentucky law (specifically, KRS § 281.615, *et seq.*) from operating as a full-service moving company unless he first obtains a Household Goods Certificate (Certificate) from the Kentucky Division of Motor Carriers (Division).  *Id.* ¶ 3.  But the statutory requirements for obtaining a Certificate create an unconstitutional "Competitor's Veto" process that is arbitrary and discriminatory, and which lacks any rational relationship to a legitimate state interest.

This "Competitor's Veto" process enables existing moving companies to protest against any application for a new Certificate based not on any factors relating to public health and safety, but solely on the allegation that the applicant's new moving company would compete with their businesses.  *Id.* ¶ 4; KRS § 281.625(1)-(2).  Once a protest is filed, the applicant is required to participate in a public hearing where he must prove to the Division's satisfaction that, among other things, the applicant's moving company "is or will be required by the present or future public convenience and necessity," that existing moving businesses are "inadequate," and that a new moving business would be "consistent with the public interest."  *Id.* ¶¶ 4, 19; KRS § 281.630; KRS § 281.625(2).  Neither the statute nor its implementing regulations contain any definition of these terms.  *Id.* ¶ 20.

Bruner brought suit pursuant to 42 U.S.C. § 1983 (Section 1983), alleging that the Competitor's Veto procedure imposes a significant burden on his constitutionally protected right to pursue a lawful occupation, and that burden bears no rational connection to protecting public health, safety, and welfare, but only protects established companies against competition, in violation of the Due Process, Equal Protection, and Privileges or Immunities Clauses of the Fourteenth Amendment. Complaint ¶¶ 38-60; *see Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002) ("[P]rotecting a discrete interest group from economic competition is not a legitimate governmental purpose."); *Merrifield v. Lockyer*, 547 F.3d 978, 991 n.15 (9th Cir. 2008) ("[M]ere economic protectionism for the sake of economic protectionism irrational with respect to determining if a classification survives rational basis review."). Bruner also alleges that KRS § 281.615 vests the government with unbridled discretion in determining what constitutes a "public necessity" for a new moving business, and in granting or withholding moving licenses, in violation of the Equal Protection and Due Process Clauses. Complaint ¶¶ 52-54; *Yick Wo v. Hopkins*, 118 U.S. 356, 368-70 (1886). If these allegations are proven true, Bruner would be entitled to an injunction to protect his constitutional rights. *Craigmiles*, 312 F.3d at 229.

In accordance with the procedure specified in *Ex parte Young*, 209 U.S. 123 (1908), Bruner sued the Governor, members of the Department who enforce KRS § 281.615, and the Attorney General, all in their official capacities, seeking

- 3 -

declaratory and prospective injunctive relief.  Complaint ¶ 6.  Defendant, Attorney General Jack Conway (Conway) has moved to dismiss on the grounds that he is not a proper party to this suit, Defendant Conway's Memorandum in Support of Motion to Dismiss (Def. MTD) at 2-3, that this suit is barred by sovereign and prosecutorial immunity, *id.* at 3-4, and that Bruner has failed to adequately allege any violation of his constitutional rights.  *Id.* at 2.  That motion should be denied.

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff."  *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir.1991).  A complaint should not be dismissed if it alleges facts, that if taken as true, would "plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  This standard is met "even if it appears 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  When a defendant moves to dismiss based on absolute immunity, he "bears the burden of showing that . . . immunity is justified."  *Burns v. Reed*, 500 U.S. 478, 486 (1991).

- 4 -

**ARGUMENT**

**I**

**BRUNER HAS PROPERLY ALLEGED THAT HIS
CONSTITUTIONAL RIGHTS HAVE BEEN VIOLATED**

In his motion to dismiss, Conway argues that Bruner has not adequately alleged facts sufficient to support a constitutional claim under Section 1983 because he has alleged no "specific actions taken by the Attorney General that violated any of his Constitutional rights."  Def. MTD at 2.  Not only is that statement untrue (*see* section 1 below), but it also shows a fundamental misunderstanding of Bruner's constitutional claims.  Bruner does not seek retroactive relief for any violations of his rights that have occurred due to Conway's enforcement of KRS § 281.615 in the past.  Bruner seeks *prospective* injunctive and declaratory relief from the *future* enforcement of that law.  To seek that relief he need not allege any "specific actions" that Conway has taken.  *Supreme Court v. Consumers Union of United States*, 446 U.S. 719, 737 (1980) (When seeking injunctive relief under Section 1983, plaintiffs need not "await the institution of state-court proceedings against them in order to assert their federal constitutional claims."); *Wooley v. Maynard*, 430 U.S. 705, 710 (1977) ("[W]hen a genuine threat of prosecution exists, a litigant is entitled to resort to a federal forum to seek redress for an alleged deprivation of federal rights.").  He need only allege that the "'statute, ordinance, regulation, custom, or usage'" at issue is depriving him of a right secured by the Constitution, *Adickes v. S.H. Kress & Co.*,

- 5 -

398 U.S. 144, 150 (1970) (citation omitted), and that Conway has "some connection" to the enforcement of that law.  *Ex parte Young*, 209 U.S. 123, 157 (1908).  Bruner has met that burden here.

## A. Bruner Has Properly Alleged That KRS § 281.615 Deprives Him of Rights Guaranteed by the Fourteenth Amendment

The Supreme Court has made clear that the Constitution protects every individual's right to earn a living free from unreasonable government interference. *Lowe v. SEC*, 472 U.S. 181, 228 (1985).  States may regulate that right only to the extent that such regulations "'have a rational connection with the applicant's fitness or capacity to practice' [a] profession."  *Id.* (quoting *Schware v. Bd. of Bar Exam'rs*, 353 U.S. 232, 239 (1957)).  When a licensing law bears no rational relationship to public health, safety, and welfare, or only protects established companies against competition from new businesses, that law violates the Fourteenth Amendment. *See*, *e.g.*, *New State Ice Co. v. Liebmann*, 285 U.S. 262, 278 (1932) (a licensing restriction that "shut out new enterprises, and thus create[d] and foster[ed] monopoly in the hands of existing establishments" was unconstitutional); *Merrifield*, 547 F.3d at 991 n.15 ("[M]ere economic protectionism for the sake of economic protectionism is irrational . . . [under] rational basis review."); *Craigmiles*, 312 F.3d at 224 ("[P]rotecting a discrete interest group from economic competition is not a legitimate governmental purpose.").

In *New State Ice*, the Supreme Court reviewed a regulation similar to the Act challenged here.  There, the State of Oklahoma required ice companies to obtain permits from a government commission before they could open for business.  If an existing company objected to the creation of the new business, the commission would determine whether a new ice business was a "necessity."  *Id.* at 272.  Objecting ice companies were not required to specify any health or safety concerns in order to invoke the process, nor did the board review such factors in making its determinations.  As the Court explained, "the practical tendency of the restriction" was "to shut out new enterprises, and thus to create and foster monopoly in the hands of existing establishments, against, rather than in the aid of, the interest of the consuming public."  *Id.* at 278.  While the Court recognized that states have broad discretion to regulate businesses so as to protect the public health, safety, and welfare, *id.* at 273-77, it made clear that government powers may not be used merely to aid "a private corporation" in "prevent[ing] a competitor from entering the business."  *Id.* at 278.  Because the regulation was aimed only at protecting existing ice companies from competition, the Court ruled that the regulation was unconstitutional because it violated the Due Process Clause.  *Id.* at 279.

Similarly, in *Craigmiles*, the Sixth Circuit Court of Appeals found that a law which forbade the sale of caskets by anyone other than a licensed funeral director violated the Due Process Clause because the purpose of the law was to protect funeral directors from legitimate competition.  312 F.3d at 225.  As that court

- 7 -

explained, "protecting a discrete interest group from economic competition is not a legitimate governmental purpose." *Id.* at 224. Thus, the Attorney General of that state was enjoined from enforcing the challenged law. *Id.* at 229.

Here, Bruner alleges that the Competitor's Veto procedure bars him from pursuing his chosen occupation unless he first submits to a process whereby existing companies can intervene and block his application for reasons that may be totally unrelated to public health or safety. Complaint ¶ 4. He alleges further, that like the unconstitutional laws challenged in *New State Ice*, *Craigmiles*, and *Merrifield*, this Competitor's Veto procedure is designed to favor certain constituents at the expense of others similarly situated, and bears no connection to public health, safety, morals, or general welfare. Complaint ¶ 5. If Bruner proves these allegations, he would be entitled to an injunction. *Craigmiles*, 312 F.3d at 229. Accordingly, Bruner has pled facts sufficient to justify a "plausible" inference that his constitutional rights are being violated, and Conway's motion to dismiss on these grounds should be denied. *Iqbal*, 556 U.S. at 679 (A complaint will be considered sufficient if it alleges facts, that if taken as true, would "plausibly give rise to an entitlement to relief.").

## B. As Attorney General, Conway Is Sufficiently Connected to the Enforcement of KRS § 281.615 to Be a Proper Party to This Suit

Pursuant to the Supreme Court's ruling in *Ex parte Young*, any state officer who has "*some connection* with the enforcement of the [challenged] act" may be

sued in his or her official capacity for prospective injunctive relief under Section 1983.  209 U.S. at 157 (emphasis added).  Conway meets that standard here.

As Attorney General, Conway is the state's chief law officer, KRS § 15.020, chief prosecutor, and chief law enforcement officer.  KRS § 15.700.  In that office, he must "exercise all common law duties and authority pertaining to the office of the Attorney General under the common law."  KRS § 15.020.  Those duties include, among other things, that he "commence all actions or enter his appearance in all cases . . . and attend to all litigation and legal business . . . in which the Commonwealth has an interest . . . [or] that any state officer, department, commission, or agency may have a connection with" unless otherwise specified by law.  *Id.*  Moreover, KRS § 281.800 requires that, upon the Department's request, the Attorney General take action to aid in the enforcement of KRS § 281.615.  Accordingly, under *Ex parte Young*, Conway is sufficiently connected to the enforcement of KRS § 281.615 to make him a proper party to this suit.  209 U.S. at 157; *see also*, *Cornwell v. Joseph*, 7 F. Supp. 2d 1106, 1108 (S.D. Cal. 1998) (a connection to enforcement of the "general law" is sufficient to make the attorney general a proper party under *Ex parte Young*.).

Conway argues that even if he does have a duty to enforce KRS § 281.615 in some circumstances, he is not a proper party in this case because, pursuant to KRS § 281.800, KRS § 15.190, and KRS § 15.200, he is only allowed to act to

enforce KRS § 281.615 when the Department, the Governor, or one of several other listed officials has requested his involvement in writing; and those officials have not requested his involvement in this case.  Def. MTD at 2-3.  But this is incorrect.

First, Bruner is seeking *prospective* injunctive relief against Conway. Therefore it does not matter that Conway has not yet enforced the law.  Bruner need only show that he has the power to do so in the future.  *Consumers Union*, 446 U.S. at 737 (When seeking injunctive relief under Section 1983, plaintiffs need not "await the institution of state-court proceedings against them in order to assert their federal constitutional claims."); *Wooley*, 430 U.S. at 710 ("[W]hen a genuine threat of prosecution exists, a litigant is entitled to resort to a federal forum to seek redress for an alleged deprivation of federal rights.").  Conway admits that if the Department requested his involvement in enforcing the statute in the future he would be required to comply.  Def. MTD at 2.  Accordingly, Conway has not merely "some connection" to the future enforcement of KRS § 281.615, but has a nondiscretionary duty to serve as a component of any future enforcement action.  Thus injunctive relief against Conway is proper.  *Ex parte Young*, 209 U.S. at 157; *cf. Cornwell*, 7 F. Supp. 2d at 1109-10 (Plaintiffs could sue to enjoin any official, including the Attorney General, who could *potentially* enforce the law, because failing to enjoin any such official would render the injunction futile.).

Second, even if Conway's restrictive reading of KRS § 281.800 and KRS § 15.190 were correct, which Bruner disputes,[2] it still would not immunize Conway from this suit to enjoin him from enforcing KRS § 281.615. Indeed, in *Ex parte Young*, the Supreme Court rejected arguments identical to those Conway makes here. There, the Court was asked to determine whether Minnesota's Attorney General was a proper party to a Section 1983 lawsuit challenging the constitutionality of a state law limiting the maximum rate for railroads. 209 U.S. at 149. The Attorney General in that case argued, as Conway does here, that he was not a proper party to the suit because the law at issue tied his ability to enforce that law to the discretion of the state Railroad Commission. *Id.* at 161. The Court rejected this argument, holding that the Attorney General, under his "power existing at common law" had a general duty imposed upon him to "enforce the statutes of the State, including . . . the act in question." *Id.* Thus, the "[Attorney General's] power by virtue of his office sufficiently connected him with the duty of enforcement to make him a proper party to [the] suit." *Id.*

---

[2] KRS § 281.800 and, to a lesser degree, KRS § 15.190, act as grants of power to certain state officials to demand action by the Attorney General, and do not act as restrictions on the power of the Attorney General to initiate actions on his own. *See, e.g.*, KRS § 281.800 (emphasis added) ("[u]pon the request of the Department of Vehicle Regulation, the Attorney General . . . *shall* represent the department . . . in any action or proceeding . . . arising under the provisions of this chapter relating to motor carriers."); KRS § 15.190 (emphasis added) ("County and Commonwealth attorneys *may* request in writing the assistance of the Attorney General in the conduct of any criminal investigation or proceeding."). Neither of those statutes specifically limit the common law powers of the Attorney General to enforce the law.

Similarly, in *Cornwell*, the Attorney General of California argued that he was not a proper party to a Section 1983 suit to enjoin the application of that state's restriction on African Hair braiding because that law gave primary enforcement authority to Director of the Department of Consumer Affairs, and the Director was already a party to the suit.  7 F. Supp. 2d at 1108-09.  The court rejected this argument, explaining that, even though the Director was the "primary enforcer" of the licensing requirement, so long as the Attorney General could "potentially" enforce the law, he was a proper party to the suit because "an injunction might not be viable if it did not apply to the Attorney General."  *Id.* at 1109-10.

Likewise, numerous lower courts have found that an Attorney General need not have actually acted to enforce a law or be specifically statutorily tasked with that law's enforcement in order to be a proper party in a suit to enjoin that law's enforcement. *See*, *e.g.*, *Bradley v. Milliken*, 433 F.2d 897, 905 (6th Cir. 1970) (Attorney General's discretion not to enforce unconstitutional segregation law did not make the attorney general an improper party for suit to enjoin the application of that law); *Gay Lesbian Bisexual Alliance v. Evans*, 843 F. Supp. 1424, 1426 (M.D. Ala. 1993) (Attorney General was a proper party to enjoin the implementation of a discriminatory policy at a university, even though the university was the only party involved in the policy's administration, and the attorney general was not obligated to enforce or defend the policy.); *James v. Almond*, 170 F. Supp. 331, 341 (D. Va. 1959) (Attorney General was a proper party for suit to enjoin the enforcement of a

- 12 -

statute, even when he had "no specific statutory duties under the statutes in controversy," because as the "Chief Law Enforcement officer of the Commonwealth" he was "nevertheless charged with the enforcement of the laws of [the state]").

Conway makes no effort to distinguish his claims from those rejected in these cases. Accordingly, Conway has failed to refute Bruner's well pled justifications for including him as a party to this case and his motion to dismiss on these grounds should be denied.

## II

## CONWAY IS NOT IMMUNE FROM THIS SUIT

### A. The Eleventh Amendment Does Not Bar Civil Rights Suits Brought Against State Officials in Their Official Capacity

Conway claims that "the absolute immunity from suit afforded to the state" also extends to him when sued in his official capacity as Attorney General. Def. MTD at 4. Again, Conway confuses the rules for suits seeking damages with those seeking only declaratory and injunctive relief.[3]  While state officers, including the Attorney General, are immune from suits against the state which seek relief in the form of damages, *see Edelman v. Jordan*, 415 U.S. 651, 666 (1974), the Supreme

---

[3] Notably, both cases Conway cites in support of his position dealt explicitly with claims for damages and not claims for injunctive relief.  *See, e.g.*, *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989) ("'[A] prosecutor enjoys absolute immunity from § 1983 suits for *damages* when he acts within the scope of his prosecutorial duties.'") (emphasis added, citation omitted); *Reed*, 500 U.S. at 481 ("The issue in this case is whether a state prosecuting attorney is absolutely immune from liability for damages under 42 U.S.C. § 1983.").

- 13 -

Court has long held that the Eleventh Amendment does not shield state officials from claims brought against them in their official capacities to enjoin the enforcement of unconstitutional laws. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) ("[A] suit challenging the constitutionality of a state official's action is not one against the State."); *Ex parte Young*, 209 U.S. at 167. Indeed, Section 1983 claims against state officers in their official capacities are routine. *See*, *e.g.*, *Sch. Dist. of the City of Pontiac v. Sec'y of the United States Dep't of Educ.*, 584 F.3d 253, 304 n.4 (6th Cir. 2009) ("A state official can be sued in an official capacity in federal court under *Ex parte Young*."); *League of Women Voters v. Brunner*, 548 F.3d 463, 473-74 (6th Cir. 2008) (same).

As the Court explained more than a century ago in *Ex parte Young*, if the law that a state officer enforces violates the Federal Constitution, "the officer . . . is . . . stripped of his official or representative character . . . [and] [t]he State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." 209 U.S. at 160. Therefore, sovereign immunity will not apply so long as "'[the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *League of Women Voters,* 548 F.3d at 474 (citation omitted).

Here, Bruner has sued Conway in his official capacity under Section 1983 to enjoin his enforcement of a state law which violates Bruner's constitutional rights. Complaint ¶ 6. Bruner has not sought any damages. *Id.* Accordingly, pursuant to

- 14 -

*Ex parte Young*, Conway is not covered by Eleventh Amendment sovereign immunity.

### B. Prosecutorial Immunity Does Not Preclude Declaratory and Injunctive Relief for Constitutional Violations

In addition to his claim to sovereign immunity, Conway also argues Bruner's suit against him is barred by prosecutorial immunity.  Def. MTD at 3-4.  Because prosecutorial immunity is a form of absolute immunity, Conway "bears the burden of showing that . . . immunity is justified."  *Reed*, 500 U.S. at 486.  Conway has not met that burden here.

Prosecutorial immunity only applies to suits for *damages* stemming from an attorney general's actions in "initiating a prosecution and in presenting the State's case."  *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  Yet Bruner does not seek damages for any actions Conway may have taken.  Bruner seeks prospective relief to enjoin Conway from enforcing KRS § 281.615 in the future.  Unlike claims for damages, claims for prospective, declaratory, or injunctive relief are not barred by prosecutorial immunity. *Consumers Union*, 446 U.S. at 737; *Fry v. Melaragno*, 939 F.2d 832, 839 (9th Cir. 1991); *Martinez v. Winner*, 771 F.2d 424, 438 (10th Cir. 1985); *Bd. of Trustees v. Hayse*, 782 S.W.2d 609, 616 (Ky. 1989) (citation omitted) (Kentucky's broad view of sovereign immunity "cannot be used as a 'bar to litigants seeking prospective injunctive relief for violations of federally protected rights against state officials.'").

- 15 -

Indeed, state attorneys general are often parties in suits brought pursuant to Section 1983 to enjoin the enforcement of unconstitutional laws. *See Consumers Union*, 446 U.S. at 736-37 (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975), and *Ex parte Young* as just two of the "myriad of suits" against attorneys general in federal courts that were not barred by the Eleventh Amendment.); *see also*, *Auvaa v. City of Taylorsville*, 506 F. Supp. 2d 903, 912 (D. Utah 2007) ("[O]ne of the key ways around the Eleventh Amendment is to sue the attorney general in federal court for injunctive relief.").

This makes sense. Section 1983 gives plaintiffs an avenue to enjoin state officials from applying unconstitutional laws against them. *Mitchum v. Foster*, 407 U.S. 225, 242 (1972). State attorneys general are the state officers typically entrusted with the power to enforce the law. *Consumers Union*, 446 U.S. at 737. To "'give prosecutors absolute immunity . . . would create an enormous obstacle to applying federal law in the states'" and would thus run contrary to the purpose of Section 1983. *See Auvaa*, 506 F. Supp. 2d at 912 (citation omitted).

Thus, in cases like this one, where plaintiffs do not seek damages for past misconduct, but instead seek injunctive relief, prosecutorial immunity will not provide a bar to suit.

**CONCLUSION**

For the forgoing reasons, Bruner has sufficiently plead his claims against Conway and Conway has failed to show that he is immune from suit.  Therefore, Conway is a proper party to this suit and his motion to dismiss should be denied.

DATED:  October 4, 2012.

Respectfully submitted,

TIMOTHY SANDEFUR
JOSHUA P. THOMPSON
Pacific Legal Foundation

KRISTOPHER D. COLLMAN
The Getty Law Group, PLLC

_____ s/ Timothy Sandefur _____
TIMOTHY SANDEFUR*

Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747
E-mail:  tsandefur@pacificlegal.org

KRISTOPHER D. COLLMAN
The Getty Law Group, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky 40507
Telephone:  (859) 259-1900
Facsimile:  (859) 259-1909
E-Mail:  kcollman@gettylawgroup.com
Attorneys for Plaintiffs

*pro hac vice

- 17 -

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2012, I electronically filed the foregoing with

the clerk of the court by using the CM/ECF system.


_____s/ Timothy Sandefur_____
TIMOTHY SANDEFUR*

Attorney for Plaintiffs

*pro hac vice