UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| RALEIGH BRUNER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 3: 12-57-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| TOM ZAWACKI, Commissioner of Motor Vehicle Regulation for the Kentucky Department of Vehicle Regulation, *et al.*, | ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiffs Raleigh Bruner's and Wildcat Moving, LLC's motion for summary judgment. [Record No. 72] The Plaintiffs contends that they are entitled to summary judgment on their claim that the notice, protest, and hearing provisions of the Kentucky statutes applicable to moving companies, contained within KRS § 281.615 *et seq.*, and the implementing regulations, violate the Fourteenth Amendment of the United States Constitution. They request that the Court issue prospective injunctive relief, permanently enjoining the Defendants from enforcing the statutes in a way that violates the constitutional rights of new moving companies by allowing existing moving companies to veto new competition. For the reasons set forth below, the Plaintiffs' motion will be granted.

**I.**

Wildcat Moving, LLC ("Wildcat"), is a Kentucky limited liability company owned by Raleigh Bruner. [Record No. 1, p. 2 ¶2] Bruner offered his moving services informally *via* the Internet until forming Wildcat in 2012, "to operate as a full-service moving company throughout the state of Kentucky." [*Id.*] Since 2012, Wildcat has moved thousands of clients. [Record No. 73, p. 8] It now employs thirty-one people, including Bruner, and operates five moving trucks. [*Id.*, p. 4 ¶10] However, Wildcat has been performing moving services without the requisite certificate under Kentucky law.

In Kentucky, individuals and companies involved in moving — that is, the intrastate transporting of personal effects and property used or to be used in a dwelling — are required by statute to obtain a Household Goods Certificate, also known as a Certificate of Public Convenience and Necessity (hereafter, a "Certificate") from the Kentucky Transportation Cabinet Division of Motor Carriers (hereafter, the "Cabinet"). *See* KRS § 281.615 *et seq.*[1] Operating without a Certificate is a misdemeanor punishable by a fine ranging from $2,000 to $3,500 and imprisonment of up to thirty days. KRS § 281.990(2).

Under the statute, a Certificate:

> shall be issued to any qualified applicant therefor[e], authorizing the whole or any part of the operation covered by the application, if it is found that the applicant is *fit, willing, and able* properly to perform the service proposed and to conform to the provisions of this chapter and the requirements and the administrative regulations of the department promulgated thereunder, *and*

---

1   Proposed legislation is pending which would amend the Certificate requirement in the context of Household Goods. *See* 2014 Bill Text KY B.R. 92.

-2-

> *further that the existing transportation service is inadequate,* and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity, and that the proposed operation, to the extent authorized by the certificate, will be consistent with the public interest and the transportation policy declared in this chapter. . . .

KRS § 281.630(1) (emphasis added).

This statute and the corresponding regulations establish a multi-step process to obtain a Certificate. First, an aspiring mover such as Bruner submits his application to the Cabinet. The Office of Legal Services reviews the application to determine whether the applicant is "fit, willing, and able to properly perform the service proposed." KRS § 281.630(1); [Record No. 73-2, p. 6 lns. 4-7] In addition to a finding that an applicant is "fit, willing and able," the mover must show that existing moving services are "inadequate," and that a new moving company serves the "present or future public convenience and necessity." KRS § 281.630(1).

An applicant is required to publish notice of his application in a newspaper of general circulation in the proposed territory or e-mail existing certificate holders. KRS §§ 281.625(b), 281.6251. Following the notification, "[a]ny person having interest in the subject matter may . . . file a protest to the granting, in whole or in part, of the application." KRS § 281.625(2). If a protest is filed, the department must hold a hearing. Otherwise, the hearing is discretionary. KRS § 281.625(2); *see also* 601 KAR. § 1:030(4)(1). The length of time until a hearing takes place varies. A hearing may be held sixty to ninety days after the filing of the protest, but it may take up to a year. [Record No. 73-2, p. 30 lns.12-15]

Additionally, applicants are generally required to be represented by counsel at the hearing. *See Ky. State Bar Ass'n v. Henry Vogt Machine Co., Inc.*, 416 S.W.2d 727 (Ky. 1967) (representation of a corporation before administrative bodies constitutes the practice of law).

Since 2007[2], thirty-nine new applications for Certificates have been filed by companies seeking to enter the moving business.[3] [Record No. 73, p. 11; *see, e.g.*, Record No. 73-10.] Existing moving companies have filed 114 protests in opposition to these applications. [*Id.*; *see, e.g.,* Record No. 73-14.] However, no protest has ever been filed by a member of the general public. [Record No. 7, pp. 16-17] Of the decided applications, nineteen were protested by one or more Certificate-holding moving companies. [Record No. 73, p. 11] Of those nineteen protested applicants, sixteen chose to abandon or withdraw their applications. [Record No. 73-8] The Defendants concede that it is "a common result" for a protested applicant to abandon the application process rather than go through the hearing process with a moving company already in business. [Record No. 73-2, p. 13 lns.4-5] Ultimately, the three applicants which chose to undergo the hearing procedure were all denied Certificates. [Record No. 73-18] In summary, the Cabinet has never issued a Certificate to a new applicant when a protest from a competing mover was made.

---

2   Wildcat limited its discovery requests to the date of January 1, 2007, until the filing of this lawsuit. [Record No. 73, p. 10 n.4] It did so in to limit discovery to "manageable boundaries"; however, the Plaintiffs affirm that there are no facts to suggest that the protesting and hearing procedure operated in a different way previously. [*Id.*] And the Cabinet does not argue that the procedure has been different at any other time. [Record No. 73, p. 11]

3   Some of the applications are still pending. [Record No. 73, p. 11]

Even where a protested applicant is determined to be "fit, willing, and able," he or she will be denied an application if the applicant has not shown that existing moving services are inadequate.[4] [Record No. 73-18, pp. 8-9; Record No. 73-23, p. 5] Proof of a population explosion in the service area by expert testimony is not sufficient to overcome the competitor's protest. [Record No. 73-23, p. 3] It is also noteworthy that an existing moving company that protests an applicant for a new Certificate may offer the applicant the opportunity to buy a Certificate it holds. KRS § 281.630(8); [*See* Record No. 73-12, p. 6 (noting that two moving companies that protested the application of Margaret's Moving, LLC, offered to sell a Certificate to the applicants for $25,000.00).[5]] Further, no application for the sale or transfer of an existing Certificate has ever been protested or denied. [Record No. 73-8]

The Plaintiffs filed this action under 42 U.S.C. § 1983 against members of the Cabinet in their official capacities (collectively "the Cabinet"), alleging that the notice, protest, and hearing procedure set out in KRS § 281.615 *et seq*., and the corresponding regulations, are unconstitutional under the Fourteenth Amendment of the United States Constitution. The Complaint seeks both declaratory and injunctive relief.[6]

---

4   In that instance, the protesting party testified that the applicant "would be a great mover," but did not believe that Louisville needed another moving company. [Record No. 73-18, p. 6]

5   The Cabinet contends that Margaret's Moving, LLC, is an "exceptional" case that cannot be used to show standard practice of the application of the statutes. [Record No. 75] However, the Court has considered the extensive record of this case and finds each example consistent with the overall assertions of the Plaintiffs.

6   During discovery, the Cabinet filed a separate action in the Circuit Court of Franklin County, Kentucky, seeking a temporary injunction against Wildcat for operating as a moving company without first obtaining a Certificate. The Court granted the Plaintiffs' motion for a preliminary injunction, enjoining the

The Plaintiffs do not challenge the regulations to the extent an applicant for a Certificate is required to be "fit, willing, and able" to provide moving services. Instead, they claim that that the protest and hearing process currently followed infringe on their constitutional right to pursue the occupation of providing moving services in Kentucky in violation of due process. *See* U.S. Const. Amend XIV § 1. They also argue that the protest and hearing procedures violate the equal protection clause because they arbitrarily favor existing moving companies over new companies. *See id.* Further, the Plaintiffs assert that the statutes violate the privileges and immunities clause, and that the statutes are unconstitutionally vague.

## II.

Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008). In deciding whether to grant summary judgment,

---

Cabinet from enforcing the Certificate requirement against them until it reached the merits of their constitutional claims. [Record No. 51]

the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Whether a rational basis exists for a government regulation is a question of law. *Greenbriar, Ltd. v. Alabaster*, 881 F.2d 1570, 1578 (11th Cir. 1989). The rationality of a governmental policy is "a question of law for the judge — not the jury — to determine." *Myers v. Cty. of Orange*, 157 F.3d 66, 74 n.3 (2d Cir. 1998). As discussed more fully below, substantial latitude is granted to the government regarding legislative enactments. However, that latitude is not without limits.

### III.

As noted, the Plaintiffs have moved for summary judgment on their claims that the notice, protest, and hearing procedures are unconstitutional under the Fourteenth Amendment of the United States Constitution. The Defendants oppose summary judgment, arguing that material issues of fact remain to be decided. [Record No. 75, p. 7]

**A.     Standing**

In its response to the Plaintiffs' motion for summary judgment, the Cabinet again argues that the Plaintiffs lacks standing to sue because they never completed the application process and thus were never subject to protests. [Record No. 75, p. 10] It also contends that the case is not ripe for review because Wildcat may be denied a Certificate even if the statutes in question are invalidated. These arguments are largely duplicative of the arguments previously made and rejected. [*See* Record No. 38; *see also Chicago v. Atchison,*

*Topeka & Santa Fe Ry. Co*, 357 U.S. 77, 89 (holding that a plaintiff "was not obligated to apply for a certificate of convenience and necessity and submit to the administrative procedures incident thereto before bringing [an] action.").] Although standing may be raised at any time, the Cabinet has raised no new arguments except to cite to a non-binding case from Nevada that decided a similar issue differently. [Record No. 75, p. 11 (citing *Underwood v. Mackay*, No. 3:12-cv-MMD-VPC, 2013 WL 3270564 (D. Nev. June 26, 2013).]

Even if *Underwood* were persuasive, this case is distinguishable because Bruner *is* "faced with the prospect of either punishment if he worked without a license or enduring much expense and effort to obtain the license." *Underwood*, 2013 WL 3270564, at *7 (quoting *Merrifield v. Lockyer*, 547 F.3d 978, 982 (9th Cir. 2008)). The Defendants filed a complaint against Bruner in state court while the current case was pending, seeking to enforce the challenged statutes against him and to block him from operating as a moving company. [*See* Record No. 48-1, p. 2.] If anything, the Plaintiffs' injury is more concrete and particularized now than when the Defendants first asserted that the Plaintiffs lack standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (holding that to have standing, a plaintiff must establish an injury in fact, a casual connection between the injury, and that the injury will be redressed by a favorable decision).

Despite the Defendants' assertions to the contrary, the Court is not determining the Plaintiffs' fitness or ability to operate as a moving company. The determination of whether an aspiring moving company is "fit, willing, and able" rests solely and appropriately with the

Cabinet.[7] *See* KRS § 281.630. The Plaintiffs' complaint is that a Certificate cannot be awarded over the protests of his competitors — even if they objectively satisfy the regulatory criteria. The evidence of record established that the denial is preordained where any protest is received. The Plaintiffs are left to risk prosecution or surrender business pursuits. In either circumstance, they have demonstrated injury. Moreover, the injury is traceable to the Defendants' actions in enforcing the Certificate requirement, demonstrated by the state court injunction action against the Plaintiffs. *See Lujan*, 504 U.S. at 560. A favorable decision by this Court would redress the injury, not because the Plaintiffs would automatically be granted a Certificate, but because the unconstitutional obstacle would be removed from their path to operate a moving company in the Commonwealth. *See id.* Thus, the Court again finds that the Plaintiffs have standing.

### B. Due Process and Equal Protection[8]

The Plaintiffs argue that the notice, protest and hearing procedure violates the due process and equal protection clauses of the Fourteenth Amendment. Regarding due process, Bruner contends that his liberty interest in pursuing his chosen occupation and constitutionally protected "right to compete" are offended by the statutory scheme that acts

---

7   As noted in the Defendants' response, Bruner will be required to file an application allowing the Cabinet to assess his fitness to operate Wildcat as a moving company. [Record No. 75, p. 13]

8   The Court recognizes that the due process and equal protection clauses "protect distinctly different interests." *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004). Despite those differences, the Plaintiffs' due process and equal protection arguments will be analyzed together because they present the same issue, *i.e.,* whether the notice, protest, and hearing procedures bear a rational relation to a legitimate interest. *See, e.g., Craigmiles,* 312 F.3d at 223-24 (evaluating due process and equal protection claims together under a rational basis standard).

as a "Competitor's Veto." *See Wilkerson v. Johnson*, 699 F.2d 325, 238 (6th Cir. 1985); *Greene v. McElroy,* 360 U.S. 474, 492 (1959). And they argue that the statutes run afoul of equal protection rights by favoring existing moving companies over new applicants. *See Merrifield v. Lockyer*, 547 F.3d 978, 991-92 (9th Cir. 2008). They contend that the notice, protest, and hearing procedures are unconstitutional facially, and as applied to the moving industry.[9]

Under the due process clause of the Fourteenth Amendment, the state may not deprive a citizen of life, liberty, or property without due process of law. *See* U.S. Const. Amend. XIV § 1. "The touchstone of due process is protection of the individual against arbitrary action of the government." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). The Fourteenth Amendment "prohibits the government from imposing impermissible substantive restrictions on individual liberty," including the liberty interest to pursue a chosen occupation. *Craigmiles v. Giles*, 110 F. Supp. 2d 659, 661 (2000), *citing Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1994); *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999). Such a liberty interest is subject to reasonable regulation by the state, and the "burden is on the challenger to show that there is no rational connection between the enactment and a

---

9     The Court limits its review of the notice, protest, and hearing procedures to the Cabinet's application of the statutes to the moving industry. For the reasons discussed herein, the statutes are not facially unconstitutional, but offend rational basis only when applied to the moving industry. Whether the Court invalidates the statutes facially or as applied is not dispositive of the relief, because "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010).

legitimate government interest." *Am. Express Travel Related Servs. Co. v. Ky.*, 641 F.3d 685, 689 (6th Cir. 2011) (internal alterations and quotation marks omitted).[10]

Under the rational basis test for an equal protection challenge to a legislative classification, the wisdom of the legislature's decision is not at issue, and the statutory classification can be based on speculation, so long as it is reasonable. *FCC v. Beach Commn'ns, Inc*., 508 U .S. 307, 313-14 (1993).

### i. Rational Basis Review

Because the statute does not regulate a fundamental right or distinguish between people on the basis of suspect characteristics, it need only survive rational basis review. *Craigmiles,* 312 F.3d at 223-24. And the parties agree that rational basis is the correct standard. That is, the regulation must bear some rational relation to a legitimate state interest. An economic regulation such as this is subject to a strong presumption of validity and it will be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis" for the statute. *Maxwell's Pic-Pac, Inc., v. Dehner,* Nos. 12-6056/12-6057/12-6182, 2014 U.S. App. LEXIS 761, at *7-8 (6th Cir. Jan. 15, 2014) (*citing Beach*

---

10 In *American Express*, the Sixth Circuit overturned this Court's holding that a Kentucky statute violated due process because it bore no rational basis to a legitimate government interest. *American Express*, 641 F.3d at 691. That holding was based solely on "substantive due process," without the equal protection claims that are at issue here. *Id.* at 690-91. In addition, the statute in *American Express* was a revenue raising statute that did not touch on the economic protectionism that is of particular concern in *Craigmiles* and in this case. *See id.*

*Commc'ns*, 508 U.S. at 313-14).[11] The rational basis test is very deferential, but is not "toothless." *Mathews v. Lucas*, 427 U.S. 495, 510 (1967).

The Plaintiffs' burden is substantial. A person or business seeking to invalidate a statute under rational basis review must "negative every conceivable basis that might support it." *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973). "Only a handful of provisions have been invalidated for failing rational basis review." *Craigmiles*, 312 F.3d at 225; *Romer v. Evans*, 517 U.S. 620 (1996); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985); *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522 (6th Cir. 1998)). But the Sixth Circuit has held that "protecting a discrete interest group from economic competition is not a legitimate governmental purpose." *Craigmiles*, 312 F.3d at 224. Thus, the question before the Court is whether the notice, protest, and hearing procedure "bears a rational relationship to *any* legitimate purpose other than protecting the economic interests of" existing moving companies. *Id.* at 225 (emphasis added).

### ii. Asserted Interests

The Defendants suggest three interests that are advanced by the relevant statues. First, they argue that the protest and hearing procedure protects personal property. [Record No. 75, p. 17] Next, they claim that the regulations reduce administrative and social costs to

---

11   In *Maxwell's Pic-Pac*, the Sixth Circuit overturned a district court's holding that a Kentucky statute that prohibits groceries from obtaining a wine and liquor license violated the equal protection clause of the United States Constitution. *Maxwell's Pic-Pac*, 2014 U.S. App. LEXIS, at *2-3. However, unlike the case at hand, that holding was based solely on an equal protection challenge. *Id.* at *7. And, unlike this case, economic protectionism was not at issue. In fact, neither the lower court nor the Sixth Circuit relied upon *Craigmiles*. *See id.*; *see also Maxwell's Pic-Pac, Inc. v. Dehner*, 887 F. Supp. 2d 733 (E.D. Ky. 2012).

society. [*Id.*] Finally, they contend that the statutes "decrease information asymmetry problems present in private markets resulting from disparity in information held by parties" and prevent "excess entry" into the moving industry. [*Id.*]

Protecting personal property and reducing administrative costs are certainly legitimate government interests. However, whether the protest and hearing procedure is rationally related to these legitimate interests is a different issue. *Craigmiles*, 110 F. Supp. 2d at 662 ("[T]he mere assertion of a legitimate government interest has never been enough to validate a law."). Existing moving companies that protest new applicants are not required to offer (and none has ever offered) information about an applicant's safety record or information regarding the applicant's ability to safely operate as a mover. KRS § 281.625(2); 601 KAR.§ 1:030(4)(1); [*see also* Record No.73, p. 12.] Further, there is no indication that personal property is protected at all by allowing existing moving companies to keep potential competition from entering the market. Protecting personal property is achieved by the first requirement that the applicant show that he is "fit, willing, and able" to operate as a moving company. KRS § 281.625. But the second requirement — which effectively requires competitors to approve a new company — undermines the stated goal. The Cabinet, in essence, is providing an umbrella of protection for preferred private businesses while blocking others from competing, even if they satisfy all other regulatory requirements.

Nor does the notice, protest and hearing provisions lower administrative costs. Rather, when a protest is filed, the Cabinet *must* hold a hearing. KRS § 281.625(2). Based on the transcripts of those hearings, the owners of existing moving companies generally

testify that existing moving services are adequate, not in quality but in quantity. [*See* Record Nos. 73-17; 73-22.] The hearings are presided over by a hearing officer who issues a recommendation, which is then adopted by the Cabinet. [*See, e.g.*, Record No. 73-22, p. 5.] Because the notice and protest procedures trigger the hearing requirement under the statute, the protest and hearing procedures actually increase administrative costs, especially where the result is pre-determined. In essence, both public and private resources are consumed in a futile administrative exercise.

The defendants also posit, through their expert,[12] that preventing excess entry into the moving business serves the public because "too many individual private firms — working only under their own perceived needs and profit maximization goals — enter a market beyond the socially optimal amount, and thus impose costs on society." [Record No. 75, p. 18; Record No. 75-9, p. 3] The Defendants further speculate that an unprofitable moving company is "less likely to be able to take all necessary steps to promote the safety of its customers' personal property," which could "also directly endanger the public health as well if these forced costs savings result in physical harm to employees or other citizens." [Record No. 75-9, p. 3]

---

12   The Plaintiffs challenge the Defendants' expert, asserting that he had not read any of the discovery documents, has not done researched or published on matters relating to the relevant subject matter. [Record No. 73, p. 21 n.9] But this assertion misses the point. The Defendants are not required to produce empirical data or evidence under the extremely low level of scrutiny that is applicable here. "A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification." *Heller v. Doe*, 509 U.S. 212, 320. Rather, "a legislative choice. . . may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns*, 508 U.S. at 315.

As the protest and hearing procedures are applied, however, an existing moving company can essentially "veto" competitors from entering the moving business for any reason at all, completely unrelated to safety or societal costs. The Cabinet undertakes no review regarding excess entry into the moving business. In fact, Cabinet officials testified that they had never heard of the phrase "excess entry."[13] [Record No. 73-1, p. 31; 73-2, p. 32] Cabinet officials also admitted that the Cabinet never takes such factors into consideration. [*Id.*] This alleged legitimate interest is further contradicted when one considers that many moving companies successfully operate for years without a Certificate and, therefore, without the Cabinet's determination that existing moving services are "inadequate." [*See* Record No. 73-18, p. 4 (noting that one new applicant operated as a moving company thirty-five years before applying for, and being denied, a Certificate).] To the extent that the protest and hearing procedure prevents excess entry into the moving business, it does so solely by protecting existing moving companies — regardless of their quality of service — against potential competition.

The Cabinet also asserts that the protest and hearing procedures serve information asymmetry concerns because the "notice" provision of the statute invites the public to participate in the hearing. [Record No. 73-4, p. 3] Information asymmetry occurs when "one party [to] a transaction has more pertinent information than another party which can result

---

13  General Counsel Jesse Rowe was identified by the Defendants as the "person most knowledgeable" pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and testified on behalf of the Cabinet. [Record No. 73, p. 22 n.11]

in private market transaction that are not as socially beneficial as could be obtained, or actually 'harm' one party." [Record No. 75-9, p. 2]

However, the statute being challenged is phrased in the disjunctive. That is, an applicant is required to publish notice in the newspaper *or* e-mail existing certificate holders, not both. KRS § 281.625(1). That existing moving companies are the intended targets of the notice requirement is evidenced by the fact that all protests in the past five years have been filed by existing moving companies. [Record No. 73-7] No member of the general public has ever filed a protest or participated in a hearing. The protests filed by existing moving companies explicitly state that they are protesting because the applicant would be "directly competitive" to the companies and would "result in a diminution of protestant's revenues." [Record No. 73, p. 2] As the statute is applied, the only "information" supplied to new applicants is that no new competition is wanted.

### iii. Economic Protectionism

Because there is no link between the protest and hearing procedures and any alleged government interest in health and safety, the Plaintiffs have successfully negated the Defendants' purported purposes behind the procedure. *See Lehnhausen,* 410 U.S. at 364. The Court, undertaking its obligation to posit other conceivable reasons for validating the statute, finds none. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Instead, its "more obvious illegitimate purpose to which [it] . . . is very well tailored" is to act as "a significant barrier to competition in the [moving] market." *Craigmiles*, 312 F.3d at 228.

"No sophisticated economic analysis is required to see the pretextual nature of the state's proffered explanations" for the regulations. *Id.* at 229.

The Sixth Circuit has held that economic protectionism is not a legitimate government interest.[14] *Craigmiles*, 312 F.3d at 229; *followed by St. Joseph Abbey v. Castille*, 835 F. Supp. 2d 149, 157 (5th Cir. 2008) (rejecting economic protectionism as a legitimate governmental interest in the context of the sale of coffins); *but see Powers v. Harris*, 379 F.3d 1208 (10th Cir. 2004). "[W]here simple economic protectionism is effected by state legislation, a virtually per se rule of invalidity has been erected." *City of Philadelphia v. N.J.*, 437 U.S. 617, 624 (1978) (discussing the commerce clause). This "measure to privilege certain businessmen over others at the expense of consumers is not animated by a legitimate governmental purpose and cannot survive even rational basis review." *Craigmiles,* 312 F.3d at 229. Accordingly, based on the foregoing discussion and analysis, the Court finds that the notice, protest, and hearing procedures contained in KRS § 281.615 *et seq.*, as applied to the moving service industry in an act of simple economic protectionism, offend and violate the Fourteenth Amendment of the United States Constitution.

### C.     Privileges and Immunities

The Plaintiffs also argue that the statutes are unconstitutional under the privileges and immunities clause of the Fourteenth Amendment. But this clause, "largely dormant since the *Slaughter-House Cases*, 83 U.S. (16 Wall) 36, 21 L.Ed. 394 (1872), restricted its coverage

---

14      *Craigmiles* has not been uniformly followed. *See Powers v. Harris*, 379 F.3d 1208, 1218-19 (10th Cir. 2006). *Powers* criticized the Sixth Circuit's holding that economic protectionism is not a legitimate interest. Yet, this Court is obligated to follow the well-reasoned holding of the Sixth Circuit in *Craigmiles.*

to 'very limited rights of national citizenship' and held that clause did not protect an individual's right to pursue an economic livelihood against his own state." *Craigmiles*, 312 F.3d at 229. As in *Craigmiles*, the Court need not "break new ground" to determine the constitutionality of the protest and hearing procedures in question. *Id.* "Revival of the Privileges and Immunities Clause may be an interesting and useful topic for scholarly debate but this memorandum is not the place for that discussion." *Powers v. Harris*, No. CIV-01-445-F, 2002 WL 32026155, at *24 (W.D. Ok. Dec. 12, 2002).

### D. Unconstitutionally Vague

Finally, the Plaintiffs argue that KRS § 280.630(1) is unconstitutionally vague. Specifically, they assert that the words "inadequate" and "present or future public convenience and necessity," as well as the requirement that the applicant prove "that there is a need for the service" under 601 KAR §1:031(1), are unconstitutionally vague. [Record No. 73, pp. 31-32] "When a statute is not concerned with criminal conduct or first amendment considerations, the court must be fairly lenient in evaluating a claim of vagueness." *Doe v. Staples*, 706 F.2d 985, 988 (6th Cir. 1983); *see also Maxwell's Pic Pac*, 2014 U.S. App. LEXIS 761, at *14-15. "[U]ncertainty in this statute is not enough for it to be unconstitutionally vague; rather, it must be substantially incomprehensible." *Exxon Corp. v. Busbee*, 644 F.2d 1030, 1033 (5th Cir. 1981). The Kentucky Supreme Court and the applicable regulations have defined the terms "inadequate" and "present or future public convenience and necessity." *Eck Miller Transfer Co. v. Armes*, 269 S.W.2d 287, 289 (Ky.

1954); *Germann Bros. Motor Trans., Inc. v. Flora*, 323 S.W.2d 570, 571 (Ky. 1959); *see also* 601 KAR § 1:031. In short, this argument is unavailing to the Plaintiffs here.

## IV.

It bears repeating that a party bears a daunting task when challenging a statute under rational basis review. However, rational basis scrutiny is deferential, not completely "toothless." *Matthews,* 427 U.S. at 510. Where, as here, there exists a "measure to privilege certain businessmen over others at the expense of consumers [that] is not animated by a legitimate governmental purpose [it] cannot survive even rational basis review." *Craigmiles,* 312 F.3d at 229. Again, however, the Court reiterates that its holding is limited to the application of the statutes and regulations in issue to the moving service industry. This decision does not mean that past Certificates are invalidated; rather, that prospective moving companies in the future will not be subject to a "veto" from their competition before they may lawfully act as a moving company.

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1. Plaintiffs Raleigh Bruner's and Wildcat Moving, LLC's Motion for Summary Judgment [Record No. 72] is **GRANTED** with respect to their claims that KRS § 281.615 *et seq*., and implementing regulations, violate the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. The Plaintiffs' remaining claims are **DISMISSED**.

2. The Defendants and their agents, officers, and successors, are **ENJOINED** from enforcing KRS § 281.615 *et seq.*, and any implementing regulations, as a "Competitor's Veto" as described above in the context of the moving service industry.

3. All claims having been resolved, this matter is **DISMISSED** and **STRICKEN** from the Court's docket.

4. A separate Judgment shall issue this date.

This 3rd day of February, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge